UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CR-00287-HEA-SPM |
| | ) |
| JASON LEVI MEYRAND, | ) |
| | ) |
| Defendant. | ) |

### REPORT, RECOMMENDATON AND MEMORANDUM OPINION CONCERNING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

All pretrial matters in the above-referenced case have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). This matter is before the Court on Defendant Jason Levi Meyrand's ("Meyrand") Motion to Suppress Statements. ECF No. 37.[1]

### BACKGROUND AND PROCEDURAL HISTORY

Meyrand is charged in an indictment with four counts of production of child pornography, in violation of 18 U.S.C. §2251(a) (Counts 1-4), and one count of access with intent to view, in violation of 18 U.S.C. §2252A(5)(B). The charges stem from an investigation that began in January 2023, when an undercover Task Force Officer with Homeland Security Investigations ("HSI") from Charlotte, North Carolina, determined that a Kik group, in which Meyrand was later deemed to be a participant, was distributing child pornography online. On May 24, 2023, investigators executed a search warrant on

---

[1] Also pending before the undersigned are Meyrand's Motion to Suppress Evidence (ECF No. 36), Motion to Dismiss Count 5 of the Indictment (ECF No. 38), Motion for Bill of Particulars, (ECF 39) and Motion to Inspect Grand Jury Transcripts and Evidence Log (ECF No. 63). On January 13, 2025, the undersigned issued a Report and Recommendation on Meyrand's Motion to Suppress Evidence (ECF No. 74) and will address the remaining pretrial motions in a separate Report and Recommendation and Order.

Meyrand's residence. While serving the search warrant, investigators encountered Meyrand. The lead investigator, Detective Stephanie Stoehner with the Special Investigations Unit of the St. Louis County Police Department ("Det. Stoehner"), interviewed Meyrand at the scene while the search warrant was being executed. On June 20, 2024, Meyrand filed the instant motion to suppress statements arguing he was interrogated while in custody; during the interrogation he asked for a lawyer; and without providing a lawyer, the officers continued their interrogation in violation of Meyrand's Fifth Amendment rights. *See* ECF No. 37, at p.1.

On September 11, 2024, the undersigned held an evidentiary hearing. Det. Stoehner testified on behalf of the United States. The United States also offered documentary evidence, including an audio and written transcript of Det. Stoehner's interview of Meyrand. *See* Govt. Ex. 7 & 7A. Counsel for Meyrand cross examined Det. Stoehner and relied on the recorded interview in support of Meyrand's motion.

At the close of all evidence the undersigned heard oral arguments in support of the parties' respective positions, and the United States offered additional case law not included in its initial briefing. Following the hearing, Meyrand requested, and was granted, time to submit post-hearing briefs. After considering the evidence adduced at the hearing, the oral arguments of counsel, the briefs of the parties, and the applicable law, I make the following findings of fact and conclusions of law.

    I.    **FACTUAL FINDINGS**

Although they are not central to the issues raised in Meyrand's Motion to Suppress Statements, as background, the undersigned adopts and incorporates by this reference the factual findings regarding the investigation and search warrant that ultimately led to Meyrand's arrest set out in the Report and Recommendation regarding Meyrand's Motion to Suppress Evidence entered on January 13, 2025. ECF No. 74. Det. Stoehner interviewed Meyrand while members of the investigative team were executing the

search warrant on Meyrand's residence. As mentioned above, Det. Stoehner's interactions with Meyrand were audio recorded and ultimately transcribed, and both the audio recording and transcript of the recording were submitted into evidence at the hearing. *See* Govt. Exhs. 7 and 7A.

When Det. Stoehner first encountered Mr. Meyrand, the SWAT Team had already entered the residence and he was outside of his residence, in handcuffs, with his significant other, Ms. Hammer. Det. Stoehner requested that the handcuffs be removed by the SWAT Team, and asked Meyrand to accompany her to her police vehicle for an interview. The handcuffs were removed and Meyrand accompanied Stoehner and one other investigator to her umarked police vehicle which was parked a short distance from the residence. Det. Stoehner sat in the driver's seat and Meyrand was seated in the front passenger seat. The other officer was seated in the backseat behind Meyrand. Det. Stoehner advised Meyrand that he was not under arrest "right now", but she wanted to talk to him and the outcome of was to "be determined". *See* Govt. Ex. 7A, p. 4. Det. Stoehner explained that she was "going to read [Meyrand his] rights because of the way everything happened with the SWAT team coming." *Id.* at pp. 4-5. She then gave Meyrand the following advice:

> DET. STOEHNER:   So before I ask you any questions, you must understand what your rights are. You have the right to – you don't have to make any statement at this time and have a right to remain silent. Do you understand that?
>
> MR. MEYRAND:   Yeah.
>
> DET. STOEHNER:   Anything you say can and will be used against you in a court of law. Do you understand that?
>
> MR. MEYRAND:   Yes.
>
> DET. STOEHNER:   You are entitled to consult with an attorney before an interview and to have an attorney present at the time of the interview. Do you understand that?

| | |
|---|---|
| MR. MEYRAND: | Yes. |
| DET. STOEHNER: | And if you cannot afford an attorney, one will be appointed for you. Do you understand that? |
| MEYRAND: | Yes. |
| DET. STOEHNER: | Okay. And you want to talk about why we're here today, right? |
| MR. MEYRAND: | Yeah. Is this a federal thing? Because this seems like a federal thing or something, holy crap. |

*See* Govt. Exh. 7A, at pp. 5-6. At the evidentiary hearing, Det. Stoehner explained that when she referenced "the way everything happened with the SWAT Team" she meant the sudden show of force involving about 20 officers and the use of the Bearcat vehicle and weapons.

Approximately 40 minutes into the interview, Meyrand, Det. Stoehner, and Det. Woodard (the second investigator in the backseat), had the following exchange:

| | |
|---|---|
| MR. MEYRAND: | In the reality of this, I should have a lawyer. |
| DET. STOEHNER: | That's up to you. |
| MR. MEYRAND: | In the whole – I know it's up to me. In the whole grand scheme of things, I should have a lawyer. |
| DET. STOEHNER: | Well, that's up to you. |
| MR. MEYRAND: | But – but I don't really – I just – I haven't done anything – I haven't done anything. |
| DET. WOODARD: | If you haven't done anything, then you should be able to tell the truth. |
| MR. MEYRAND: | Right. |
| DET. WOODARD: | You shouldn't be afraid. |
| MR. MEYRAND: | Then I don't – I don't need a lawyer. That's why I haven't asked for one. |

      DET. STOEHNER:    Yeah. I mean, that's – like I say, I will never discourage anybody from this, but at the heart of this –

      MR. MEYRAND:    I feel like I need five more cigarettes. I'm sorry.

Govt. Exh. 7A, pp. 50-51.

After this exchange, the interview continued for approximately 30 more minutes. The exchange appeared to be cordial and Meyrand made no further mention of a lawyer. At the end of the interview, Meyrand was arrested for failure to register as a sex offender and possession of child pornography and transported to the police station.

## II.   CONCLUSIONS OF LAW

Meyrand contends his prearrest statements should be suppressed because investigators continued interrogating him after he invoked his right to counsel. In *Miranda v. Arizona*, 384 U.S. 436 (1966) the Supreme Court "adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (quoting *Miranda*, 384 U.S. at 467). "The rule in *Miranda* requires that any time a person is taken into custody for questioning, a law enforcement officer must, prior to questioning, advise the individual of his right to be free from compulsory self-incrimination and his right to the assistance of counsel." *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002) (citing *Miranda*, 384 U.S. at 444); *see also United States v. Laurita*, 821 F.3d 1020, 1023 (8th Cir. 2016) ("The rule under *Miranda* prevents the government from using statements 'stemming from custodial interrogation of the defendant,' unless the government has used 'procedural safeguards effective to secure the privilege against self-incrimination.'") (quoting *Miranda,* 384 U.S. at 444).

The parties dispute whether Meyrand was in custody for purposes of *Miranda* at the time of his prearrest interview. *See* Govt.'s Response to Defendant's Motion to Suppress Statements, ECF No. 49,

at pp. 4-5; Deft.'s Reply in Supp. Of Motion to Suppress Statements, ECF No. 57, at pp. 3-4. However, there is no dispute that Det. Stoehner advised Meyrand of his *Miranda* rights before interviewing him. Based on the factual findings, she did so because of "the way everything happened with the SWAT team." Govt. Exh. 7A, at pp. 4-5. In other words, it appears that considering the circumstances Det. Stoehner chose to treat the prearrest interview of Meyrand like a custodial interview. This Court will do the same and assume, without deciding, that Meyrand was in custody for purposes of *Miranda*. Thus, the sole question is whether, having been advised of his *Miranda* rights, Meyrand voluntarily waived those rights and made incriminating statements to police. "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004). However, "[c]ases in which a defendant can make a colorable argument that a self- incriminating statement was compelled despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarthy,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

      Meyrand does not contend his statements following the *Miranda* warnings were coerced. Indeed, based on the factual findings, after being advised of his right to remain silent and his right to counsel, Meyrand stated he understood and agreed to speak with police. Meyrand's sole contention is that approximately 40 minutes into the interview he invoked his right to counsel, and despite that invocation, officers continued with the interrogation in violation of the Fifth Amendment. If a defendant clearly and unambiguously invokes his right to remain silent or his right to counsel either prior to or during interrogation, then further questioning is permissible only if law enforcement officials "scrupulously honor" the defendant's assertion of those rights. *Michigan v. Mosley,* 423 U.S. 96, 102-04 (1975) (holding that police must scrupulously honor a suspect's invocation of the right to silence); *Edwards v.*

*Arizona*, 451 U.S. 477, 484-85 (1981) (holding that an accused who has expressed his desire to deal with police only through counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police").

In *Davis v. United States,* 512 U.S. 452, 459 (1994), the Supreme Court held that to invoke the right to counsel and, thereby cut off further questioning, "at a minimum," the defendant must make "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." The accused must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. The Eighth Circuit has repeatedly held that "only a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." *United States v. Giboney,* 863 F.3d 1022, 1029 (8th Cir. 2017) (quoting *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003)). "While a defendant is not required to speak with the discrimination of an Oxford don, [the defendant] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney." *Id.* (quoting *Davis,* 512 U.S. at 459). In other words, an ambiguous statement concerning counsel will not invoke that individual's right to counsel. *See e.g. Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (holding that a defendant's statement, "Could I call my lawyer?" was not an unambiguous request for counsel that would require cessation of further questioning); *United States v. Cloud*, 594 F.3d 1042, 1046 (8th Cir. 2010) (holding that when a police officer asked defendant if he wished to speak to an attorney and defendant stated "Yeah, probably" was not clear and unequivocal request for counsel requiring cessation of interview); *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003) (holding that a suspect's

statement, "do you know any good attorneys" was not an unequivocal request for the assistance of counsel).

Meyrand urges the court to construe the following exchange, which took place approximately 40 minutes into the interview, as evidence that he unequivocally invoked his right to counsel:

MR. MEYRAND:   In the reality of this, I should have a lawyer.

DET. STOEHNER:   That's up to you.

MR. MEYRAND:   In the whole – I know it's up to me. In the whole grand scheme of things, I should have a lawyer.

DET. STOEHNER:   Well, that's up to you.

MR. MEYRAND:   But – but I don't really – I just – I haven't done anything – I haven't done anything.

DET. WOODARD:   If you haven't done anything, then you should be able to tell the truth.

MR. MEYRAND:   Right.

DET. WOODARD:   You shouldn't be afraid.

MR. MEYRAND:   Then I don't – I don't need a lawyer. That's why I haven't asked for one.

DET. STOEHNER:   Yeah. I mean, that's – like I say, I will never discourage anybody from this . . .

Govt. Exh. 7A, pp. 50-51. *See also* Deft.'s Reply in Supp. Of Motion to Suppress Statements, ECF No. 57, at p.2.

In making these statements, Meyrand did not "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney." *Giboney,* 863 F.3d at 1029. Meyrand's statement "I know it's up to me" shows Meyrand understood he was free to choose whether to request, or not request, an

attorney. Yet, he stopped short of explicitly doing so after stating, unprompted, "But I don't really—I just—I haven't done anything." After statements by Det. Woodard, Meyrand then confirmed "I don't need a lawyer. That's why I haven't asked for one." Meyrand's motion to suppress statements fails because these statements cannot reasonably be construed as an unequivocal invocation of the right to counsel.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Jason Levi Meyrand's Motion to Suppress Statements [ECF No. 37] be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990).

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: March 3, 2025.