UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CR-00287-HEA-SPM |
| | ) |
| JASON LEVI MEYRAND, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATON AND
MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE
CONCERNING DEFENDANT'S MOTION TO DISMISS COUNT 5**

Defendant Jason Levi Meyrand is charged in an indictment with four counts of production of child pornography, in violation of 18 U.S.C. §2251(a) (Counts 1-4), and one count of access with intent to view child pornography, in violation of 18 U.S.C. §2252A(a)(5)(B) (Count 5). All pretrial matters in the above-referenced case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Currently before the Court is Defendant's Motion to Dismiss Count 5 of the Indictment on grounds that §2252A(a)(5)(B) violates the First and Fifth Amendment of the Constitution ECF No. 38. The United States has opposed the motion. ECF No. 50. After carefully considering the written submissions of the parties, controlling and other legal authority, for the reasons set out below, I find that Meyrand's Motion to Dismiss on First Amendment grounds lacks merit and should be denied. Although I also question the merit of Meyrand's

Motion to Dismiss on Fifth Amendment Due Process grounds, as detailed below, the resolution of the motion may require resolution of factual issues that are intertwined with the charged offense. As such, I find that the Court should grant Meyrand's request to defer ruling on the Fifth Amendment challenge until trial.

**I.   MOTION TO DISMISS COUNT 5 OF THE INDICTMENT (ECF NO. 38)**

Count 5 of the indictment alleges that:

> Between on or about January 1, 2021, and . . . May 25, 2023, . . . Jason Levi Meyrand, the defendant . . . knowingly accessed with intent to view material that contained images of child pornography that had been mailed, or shipped or transported . . . in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using material that traveled in interstate and foreign commerce; to wit, an Apple iPhone 11 cellular telephone that was produced outside of Missouri, and therefore, traveled in interstate and foreign commerce. In violation of Title 18 , United States Code, Sections 2252A(a)(5)(B).

*See* ECF No. 2.

Meyrand contends Count 5 must be dismissed because it is based on a statute, §2252A(a)(5)(B), that violates the First and Fifth Amendments facially and as applied to the facts of this case. He requests a pretrial ruling on his First Amendment argument but asks the Court to defer its ruling on the Fifth Amendment challenge until after trial.

**A.   *Fifth Amendment Challenge***

Meyrand acknowledges that Count 5 "essentially tracks the relevant language of §2252A(a)(5)(B)," *see* ECF No. 38, at p. 3, but argues that the statutory language gives rise to a Fifth Amendment "Due Process problem" because it is unclear what "intent" the

government must establish to sustain a conviction. *Id.* at p. 3-5. A statute violates the Due Process Clause when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes," or "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Roberts v. Jaycees*, 468 U.S. 609, 629 (1984). A statute creates fair notice concerns if it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). And a statute creates arbitrary enforcement concerns if it "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. State of Pennsylvania*, 382 U.S. 399, 402-03 (1966).

In this case, Meyrand argues that, as worded, it is unclear from the statutory language whether the government must prove that the defendant "merely access[ed] and intend[ed] to view the material containing child pornography" or if the government must "prove that the defendant specifically intended to view the child pornography itself." *Id.* at p. 4. Meyrand further argues that although the Eighth Circuit has held that "knowingly accessing a child-pornography website with the intent to view illegal materials is itself a criminal act," it is unclear from either the statute or controlling case law whether a defendant violates the statute by, for example, accessing a website "containing child pornography with the intent to view adult pornography or legal child erotica." *See id.* at p. 5 (citing *United States v. Croghan*, 973 F.3d 809, 828 (8th Cir. 2020). Meyrand contends the statute fails to

provide sufficient notice that websites, social media apps, and online conversations can qualify as prohibited material, and it invites concern about arbitrary enforcement. ECF No. 38, at pp. 3-9.

Meyrand's concern that, on its face, the statute is "vague" "standardless" and gives rise to a risk of "arbitrary enforcement" seems overblown considering how courts have construed the statute. Although it did not involve a vagueness challenge, in *Croghan,* the Eighth Circuit held that to sustain a conviction under §2252A(a)(5)(B), the government must prove not only that a defendant "knowingly accessed some proscribed material" but the defendant "knew that the material contained an image of child pornography." 973 F.3d at 828 (citing *United States v. Brune*, 767 F.3d 1009, 1020 (10th Cir. 2014)). Other Circuit Courts of Appeal have also interpreted §2252A(a)(5)(B) to mean that criminal liability for access-with-the-intent-to-view is triggered only if the government can demonstrate that a defendant intended to access *material*—i.e., a web site, computer disk, some other medium—the **defendant knew or believed contained child pornography**. *See, e.g., Brune*, 767 F.3d at 1025-26 (Phillips, J. concurring in part) (taking issue with the majority's recitation of the elements and noting that although the statute is "not a model of legislative drafting . . . §2252A(a)(5)(B) requires proof that the defendant intended to view an image of child pornography"); *United States v. Tagg,* 886 F.3d 579, 588 (6th Cir. 2018) (holding "access-with-intent liability is triggered when a person intentionally searches for images of child pornography, finds them, but then stops short of viewing the images themselves").

These cases undercut Meyrand's arguments that the statute fails to give ordinary people fair notice of the conduct it punishes or what conduct is prohibited under the statute.

Before arguing that a statute is vague "in all its applications," a defendant must demonstrate that a statute is vague "as applied to his particular conduct." *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016). Meyrand suggests he can't make that showing without delving into facts that will ultimately need to be resolved by a jury. *See* ECF No. 38, at p. 2-3. When a vagueness challenge turns upon the resolution of "factual issues related to [the defendant's] alleged offense," a court "should defer[ ] ruling until trial." *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016). The United States did not directly respond to Meyrand's request to defer ruling on the Fifth Amendment challenge to Count 5; so, it is not at all clear that both parties agree there are factual issues this Court would need to resolve before ruling on Meyrand's Fifth Amendment vagueness challenge. However, as Meyrand pointed out in his Reply in support of the Motion to Dismiss, in opposing the Motion to Dismiss Count 5, the government may have injected a certain level of uncertainty by suggesting that the "proscribed material" accessed by Meyrand may have been Meyrand's Apple iPhone or child pornography images themselves. *See* ECF No. 62, at pp. 6-7. Because Meyrand's Fifth Amendment vagueness challenge appears to require resolution of factual issues related to Meyrand's alleged offense, the undersigned will recommend deferring a ruling on Meyrand's Fifth Amendment vagueness challenge until after trial.

### B. *First Amendment Challenge*

Meyrand contends that the breadth of §2252A(a)(5)(B) also violates the First Amendment. *See* ECF No. 38, at p.10-11. The Supreme Court has held "[t]he First Amendment commands" that "Congress shall make no law . . . abridging the freedom of speech." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) (quoting *Rosenberger v. Rector and Visitor of Univ. of Va.,* 515 U.W. 819 (1995) and *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990)). The Court has recognized that "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Id.* at 244. However, the Court has also recognized that although the First Amendment bars the government "from dictating what we see or read or speak or hear," the freedom of speech "has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Id.* at 245-46. Thus, the Court's First Amendment overbreadth doctrine "seeks to strike a balance between competing social costs"—

> On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, [the Court has] vigorously enforced the requirement that a statute's overbreadth be *substantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. . . . Invalidation

>for overbreadth is strong medicine that is not to be casually employed.

*United States v. Williams,* 553 U.S. 285, 292-93 (2008) (emphasis in original) (internal citations omitted).

Construing the scope of the challenged statute is the "first step in [the] overbreadth analysis." *Id.* at 293. The Eighth Circuit has held that, in general, §2252A(a)(5)(B) "prohibits knowingly accessing with intent to view, any [book, magazine, periodical, film, videotape,] computer disk, or any other material that contains an image of child pornography." *Croghan,* 973 F.3d at 827. "Grammatically, the word 'access' (*the actus reus* of the crime) is directed towards the repository containing child pornography, not the child pornography itself." *Id.* at 828 (citing *Tagg,* 886 F.3d at 588). The statute's scienter requirement requires that before criminal liability attaches, the defendant must have intentionally accessed the repository (or material) containing child pornography and "knew that the [repository] contained child pornography." *Id.* (citing *Brune,* 767 F.3d at 1020).

The indictment in this case alleges that Meyrand "knowingly accessed with intent to view material that contained images of child pornography" but does not specify the "material" or type of repository Meyrand allegedly accessed. *See* ECF No. 2. In his motion to dismiss, Meyrand appears to ask this Court to assume that the proscribed material referenced in the indictment is Kik, the social media website through which an undercover detective linked Meyrand to images of alleged child pornography. *See* ECF

No. 38, at p. 9-10. Meyrand then argues that "[b]y classifying websites like Kik, Discord, Instagram, and X as forms of prohibited material," the statute runs afoul of the First Amendment because it proscribes access to websites where a large quantity of protected speech is taking place. *Id.* at 10-11. This argument is similar to arguments the Tenth Circuit considered and rejected in *Brune,* 767 F.3d 1009.

The defendant in *Brune* pled guilty to unlawfully knowingly and intentionally accessing with the intent to view child pornography after unsuccessfully moving to dismiss the charge as unconstitutional. 767 F.3d at 1014. On appeal, Brune argued §2252A(a)(5)(B) is unconstitutional on its face because, "despite its aim to only reach child pornography, it unintentionally restricts an individual from accessing sizable amounts of protected speech." *Id.* at 1017. In support of his overbreadth argument, Brune argued, among other things, that the statute's catchall phrase "any other material" is "expansive and possibly limitless. He claim[ed] the phrase sweeps into the statute's orbit broad categories of media protected by the First Amendment" and "[t]aken to its extreme . . . the statute potentially criminalizes all Internet access." *Id.* at 1022.

The court acknowledged that "[w]hen viewed in isolation, it is difficult to dispute that 'any other material' might be susceptible to several meanings." *Id.* at 1022. The court nevertheless rejected Brune's argument for several reasons. First, the court held, "the possibility that several workable definitions of 'material' can properly imbue the statute does not lead to an expansive reading of this term. In fact, the reverse is true as [courts]

are required to construe a phrase within a statute with reference to its accompanying words in order to avoid the giving of unintended breadth to the Acts of Congress." *Id.* at 1023. The court explained that "when general words follow specific words in a statutory enumeration, [canons of statutory construction require that] general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (quoting *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 114-15 (2001)). Applying that principal to §222A(a)(5)(B), the term "any other material" should be "construed as like in kind to, and *no more expansive in scope than*" the specific examples that preceded it. *Id.* at 1022-23 (emphasis in original). The court concluded the terms "book, magazine, periodical, film, videotape, [and] computer disk" are terms that "denote specific, concrete form of media that are used to capture, store, or deliver information as a means of communication." *Id.* at 1023.

In analyzing whether the statute prohibited Internet access, the court drew a sharp distinction between the Internet and specific forms of media that could be available on the Internet—

> The Internet is the medium; content available on the Internet, including, at a minimum, downloadable digitized images of child pornography from unique uniform resource locators (URLs), are the specific type of media that the statute targets.

*Id.* at 1023. Based on this reasoning, the court rejected Brune's suggestion that the statute targeted the Internet. *Id.* at 1024.

The *Brune* court declined the defendant's invitation to read the definition of "any other material" expansively because doing so would "implicitly eviscerate[] the statute's element of scienter and criminalize otherwise innocent conduct—a reading that smacks of overbreadth." *Id.* at 1024. In rejecting Brune's expansive interpretation, the court applied the "cardinal principle" of resorting to "every reasonable construction . . .in order to save a statute from unconstitutionality." *Id.* at 1023. The court concluded that "to ensure that the statute maintains the broadly applicable scienter element required of a criminal statute, it is necessary to understand 'any other material' as something more precise than the Internet." *Id.* at 1024. The *Brune* court extended this same logic when it rejected the government's competing proposal that the court interpret "any other material" to mean "web pages" when the medium at issue is the Internet. *Id.* at 1023, note 12. The court found "[t]hat term is vague itself and provides little guidance as to what types of internet material would be subject to the statute." *Id.* The court ultimately adopted an interpretation of §2252A(a)(5)(B) that limits its reach to specific, concrete form of media, such as URLs, that are used to capture, store, or deliver information as a means of communication. *See id.* at 1023-24.

The reasoning in *Brune* applies with equal force to this case. As in *Brune,* in this case, it is necessary to understand "any other material" as something more precise than the entire Kik website or app. By Meyrand's own admission, "[w]hile not the entire Internet, the material at issue here, Kik, is likewise a "medium" . . . in which people are

engaging in a substantial amount of protected speech." ECF No. 38, at p. 10. Applying the reasoning from *Brune,* it is the **content** available on a medium like Kik and similar social media websites, "including, at a minimum, downloadable, digitized images of child pornography from [URLs]," and not the medium/website/app itself that is the target of the statute. *Id.* at 1023. Because the Kik website and app as a whole is not "proscribed material" within the meaning of §222A(a)(5)(B), Meyrand's overbreadth challenge fails.

In addition to an overly expansive interpretation of the statute by defendant, the facts of this case are like the facts of *Brune* in one other respect. Like the defendant in *Brune,* Meyrand has presented no evidence to suggest there is any realistic danger that the statute as written has or will significantly chill protected speech, or that the "impermissible applications of §2252A(a)(5)(B), to the extent any exist, are substantial in comparison to the unprotected, criminal speech that the statute unquestionably covers." *See Brune,* 767 F.3d at 1020-21 (holding "it is defendant's burden to show from the text of the law and from actual fact that substantial overbreadth exists" and "[f]or a challenger to carry this burden, he must identify protected materials that would be inevitably targeted by the statute," a showing that "requires a statute's application to real-world conduct, not fanciful hypotheticals"); *see also Ashcroft*, 535 U.S. at 244 (holding, under First Amendment principles, a law is unconstitutional "if it prohibits a substantial amount of protected expression); *Williams,* 553 U.S. at 292 ("According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of

protected speech."). In sum, Meyrand has failed to show "substantial overbreadth in either an absolute or relative sense;" as such, the undersigned sees no grounds for "administering the strong medicine of overbreadth invalidation to §2252A(a)(5)(B)."

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Defendant Jason Levi Meyrand's Motion to Dismiss Count 5 of the Indictment [ECF No. 38] be **DENIED, in part and DEFERRED, in part**.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990).

Dated: May 8, 2025.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE